## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 1:24-cv-06859-NRB

MCGRAW PROPERTY
SOLUTIONS, LLC

    Plaintiff,

v.

FORTRESS INVESTMENT
GROUP LLC,

    Defendant.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, McGraw Property Solutions, LLC ("McGraw Property"), by its undersigned counsel, files this Amended Complaint and Demand for Jury Trial against Defendant, Fortress Investment Group LLC ("Fortress"), and in support thereof, alleges as follows:

### I. INTRODUCTION

1. This is a case about how Fortress retained McGraw Property to perform substantial work to repair and ultimately replace five roofs on commercial properties located at 4200, 4250, 4300, 4350, and 4400 W. Lake Avenue in Glenview, Illinois (the "Properties").

2. McGraw Property fully completed all of the work requested by Fortress, and then Fortress refused to pay McGraw Property for its services, which indisputably increased the value of the Properties.

3. Fortress left McGraw Property holding an empty bag. Ultimately, Fortress sold the Properties for millions of dollars and refused to pay McGraw Property for the substantial benefits it received.

## II. PARTIES, JURISDICTION, AND VENUE

4. At all times material hereto, McGraw Property was and is a Florida limited liability company duly registered and authorized to do business throughout the State of Florida, with its principal address located in Martin County, Florida. Plaintiff has one member, Ricky McGraw, a citizen of Puerto Rico. Ricky McGraw's domicile is in Dorado, Puerto Rico because he has a true, fixed permanent home and principle establishment in Puerto Rico and to which he intends to return whenever he is absent from it.

5. Fortress is a foreign limited liability company with its principal place of business in New York County, New York and is thus subject to general jurisdiction in New York pursuant to CPLR §301. For subject matter jurisdiction purposes, Fortress' principal place of business is in New York County, New York. Thus, Fortress is a citizen of New York.

6. Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(b)(1)-(2) because it is where Fortress resides and it is where a substantial part of the events or omissions giving rise to the claim occurred.

7. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of fees, costs, and interest, and is between citizens of different states.

## III. GENERAL ALLEGATIONS

**A. Atlas' Properties Were Encumbered by a Secured Loan that was Eventually Acquired by Fortress.**

8. Atlas Holdings Investment, LLC d/b/a Brookview Village Apartments, LLC together with its affiliates, Atlas Brookview Mezzanine LLC and Atlas Brookview LLC (collectively, "Atlas") were effectively the entities that owned and controlled the Properties from 2017-February 2021.

9. Atlas' ownership of the Properties were encumbered by a purchase-money loan, evidenced by a promissory note, mortgage, assignment of rents, and security agreement in favor of a lender. As further security for the loan, the Atlas entity that was the 100% equity and beneficial owner of the Properties, pledged all of its equity interest in Atlas to the lender.

10. Sometime in 2019, Atlas defaulted on the loan and Fortress acquired the loan and the security interests in the above-mentioned collateral from the lender.

**B.   Atlas' Properties Were Damaged by a Storm.**

11. On or about April 7, 2020, Atlas suffered storm damage to its Properties known as Brookview Village Apartments. Thereafter, Atlas submitted a claim to its carrier, Westchester Surplus Lines Insurance Company ("Westchester").

12. On October 21, 2020, Atlas assigned its claim to McGraw Property. A copy of the Assignment of Benefits ("AOB") contract is attached hereto as **Exhibit A**.

13. The AOB states as follows:

### ASSIGNMENT OF INSURANCE CLAIM

I, the owner/policyholder ("Customer") of the above property, authorize McGraw Property Solutions, LLC ("Company"), to enter my property and provide all services and furnish all materials necessary to preserve and protect my property from further damage. Additionally, in consideration for these repairs and Company's promise to complete all work paid for by my insurance carrier upon future settlement, I agree to assign my insurance claim to Company, subject to the terms and conditions in this contract.

Customer assigns all insurance rights, benefits, proceeds, claims, causes of action, and supplementary claims under all applicable insurance policies (collectively, "Benefits") to Company for the Services rendered or to be rendered by Company. Company will provide all labor and materials for the scope of work approved by or paid for by Carrier (collectively, "Services"). Customer directs Carrier to release all information requested by Company, its representatives, and Company's attorney to obtain the Benefits from Carrier. Customer hereby authorizes and unequivocally directs Carrier to deliver any and all payments and make any and all check(s) payable related to the Claim solely to Company.

This Assignment also includes any right of the Customer to collect for extra contractual damages, consequential damages, common law damages, and statutory damages. This Assignment allows Company to file a lawsuit in Company's name to collect proceeds assigned herein.

14. While the AOB states McGraw Property (i) "promises to complete all work paid for by [Westchester] upon future settlement;" and (ii) "will provide all labor and materials for the scope of work approved by or paid for by [Westchester]", the AOB does not say McGraw Property must solely bear all of the expenses it incurred in the performance of the contract and complete all work at its own risk. The AOB also does not contain any language limiting or restricting McGraw Property's right to payment for work performed from those that benefitted from the services rendered.

15. Similarly, the AOB does not state McGraw Property's exclusive method of payment for work completed is through any insurance proceeds paid for by Westchester. In fact, McGraw Property would have never agreed to any of the above-mentioned scenarios where its right to payment would be limited and conditional because it always had an expectation to be paid for all finished work.

16. Additionally, there were certain work items completed and materials used by McGraw Property that were never covered by Atlas' policy, but were required to be purchased and implemented as part of the roof replacements at issue in this case. Fortress was always required to pay for these items and materials.

**C.** **Fortress Foreclosed on the Properties and Became the Owner.**

17. After certain events of default occurred while Fortress was the lender, Fortress acquired the Properties in 2021 following a February 17, 2021 UCC foreclosure sale of Atlas' equity interest in the Properties.

18. After Fortress acquired the Properties, McGraw Properties' roof work and services related thereto were all coordinated, controlled by, and subject to Fortress' approval. Critically, representatives on behalf of McGraw Property and Fortress engaged in regular communications

with each other through the completion of the work Fortress required McGraw Property to perform.

**D.  Fortress Retained McGraw Property to Continue the Roof Repairs and Replacements After the Foreclosure Sale.**

19.     McGraw Property began the roof repair and replacement work while the Properties were owned by Atlas. Following the foreclosure sale, Fortress continued to retain McGraw Property to complete the roofs on the five buildings.

20.     After the foreclosure sale and throughout March 2021, Fortress and McGraw Property had extensive communications regarding the coordination of the roofing work. In fact, Fortress required that it be listed as an additional insured on McGraw Property's Certificate of Liability Insurance.

21.     Beginning in April 2021, Fortress requested status updates regarding the roof work, the number of temporary building repairs completed prior to the full roof replacements, and the estimated completion date. Upon information and belief, Fortress requested regular reports because it had only acquired the Properties in February 2021.

22.     In May 2021, McGraw Property provided Fortress with voluminous photos of the roofs so that Fortress could monitor the progress of the roof repairs to each of the five buildings. Critically, on May 20, 2021, Fortress e-mailed McGraw Property and requested an estimated date of completion for all the roof repair work, to which McGraw Property responded "[within the next 5 to 7 days at most. We are 98 percent complete at least what was presented to me." Based on this timeline, Fortress concluded that the pitched roof replacements would be finished by the end of May 2021.

23.     Throughout the remainder of May 2021, McGraw Property and Fortress exchanged communications regarding the roofs, permitting, and anticipated carpentry that may be needed. In

total, McGraw Property's work related to the pitched roofs, as well as the associated gutters and flashing.

24. While McGraw Property's roof work was in process, McGraw Property and its public adjuster were also handling the insurance claim for the storm damage. Upon information and belief, Fortress was aware of the insurance claim because McGraw Property informed Fortress of its existence after Fortress became the owner of the Properties.

25. After discussions with Westchester reached a stalemate, and on June 10, 2021, McGraw Property filed its lawsuit against Westchester in state court. The action was ultimately removed to the United District Court for the Northern District of Illinois, Eastern Division, and styled *McGraw Property Solutions LLC a/a/o Atlas Holdings Investments, LLC d/b/a Brookview Village Apartments, LLC*, Case No 1:22-cv-00396 (the "Federal Lawsuit"). Upon information and belief, Fortress was also aware of the state court action and the Federal Lawsuit because McGraw Property kept Fortress informed about material events related to the insurance claim while the roof work was ongoing.

26. Significantly, from July-August 2021, Fortress and McGraw Property exchanged e-mails about completing punch list items regarding the completed pitched roofs, and a proposal for pricing and a timeline for McGraw Property to replace the flat roofs to the buildings.

27. While Fortress did not retain McGraw Property to complete the flat roofs, Fortress retained and paid another roofing company to complete these other roofs. Upon information and belief, the price quoted by McGraw Property for the flat roofs was similar to the price Fortress ultimately paid another company to do this separate job.

28. After McGraw Property finished all of the pitched roof work, and upon information and belief, on October 6, 2021, McGraw Property sent Fortress its invoice for McGraw Property's roofing services for the total amount of $1,111,310.19. A copy of the invoice is attached hereto as **Exhibit B**. McGraw Property always expected to be paid for its completed work even if the Federal Lawsuit was not successful, which is why McGraw Property sent Fortress an invoice for the work it performed. At no time did McGraw Property agree to work for free.

29. During October-November 2021, McGraw Property worked to close out all existing permits related to the Properties, which occurred. By the end of 2021, McGraw Property finished all of the roof work and Fortress was satisfied with the results.

**E.     The Summary Judgment Proceedings in the Federal Lawsuit.**

30. In June 2022, Westchester filed its Motion for Summary Judgment or to Compel EOU and Stay Litigation (the "Motion"). A copy of the Motion is attached hereto as **Exhibit C**. During this time, McGraw Property filed its Response to the Motion and Westchester filed a Reply. Copies of the Response and the Reply are attached hereto as **Exhibit D** and **Exhibit E**, respectively.

31. Two of the significant issues in the Federal Lawsuit was (i) whether McGraw Property failed to comply with certain post-loss conditions of the policy (*i.e.*, attend an Examination Under Oath ("EUO"); or (ii) whether Westchester breached the Policy first by not complying with the appraisal provisions of the policy. The parties vehemently contested the reasons for the delays in attending the EOU.

**F.     Fortress Sells the Properties and Fails to Pay McGraw Property for the Roof Work.**

32. In December 2022, media outlets reported that Fortress sold the Properties to a buyer for over $67 million. McGraw Property was not aware this transaction occurred.

33. There is no dispute, the work performed by McGraw Property was essential to the sale.

**G.  Fortress Refused to Pay McGraw Property for the Substantial Work Performed.**

34. On April 19, 2024, the Court in the Federal Lawsuit found McGraw Property could not recover under the policy because it did not attend the EOU. A copy of the Memorandum Opinion and Order is attached hereto as **Exhibit F**.

35. On May 6, 2024, McGraw Property sent Fortress its invoice again, requesting payment.

36. This same day, Fortress advised McGraw Property that it sold the Properties in 2022 and would not be paying McGraw Property's invoice for $1,111,310.19. Yet, Fortress paid another company's invoice for the flat roofs.

37. McGraw Property indicated it was unaware of any such transaction, but responded that Fortress was obligated to McGraw Property by virtue of the substantial and valuable services rendered for Fortress' benefit and for which McGraw Property expected to be paid.

38. McGraw Property has done and performed all those matters and things properly required in order to recover damages from Fortress for the work fully performed.

39. All applicable conditions precedent to the filing of this lawsuit have been performed, waived, excused, or satisfied.

40. McGraw Property retained the undersigned counsel to represent its interests in connection with the above-captioned case and is obligated to pay undersigned counsel reasonable attorneys' fees and costs for services rendered.

41. McGraw Property commenced this lawsuit to remedy the wrongdoing by Fortress, and to recover the money it is rightfully owed.

## COUNT I
## BREACH OF IMPLIED-IN-FACT CONTRACT FOR QUANTUM MERUIT

42. McGraw Property realleges Paragraphs 1 through 41 as if fully set forth herein.

43. This is an action for breach of an implied-in-fact contract for quantum meruit against Fortress.

44. The conduct of Fortress and McGraw Property, including their spoken and written words, the relationship of the parties, and the circumstances created a contract.

45. The conduct of both parties was intentional, and each knew, or under the circumstances should have known, that the other party understood the conduct as creating a contract. McGraw Property's work was requested, approved, and accepted by Fortress.

46. McGraw Property performed all of the roofing services related to the Properties in good faith.

47. Fortress accepted McGraw Property's roofing services, and the roof replacements enabled Fortress to ultimately sell the Properties to a buyer.

48. At all material times, McGraw Property had an expectation of payment for all of the roof work performed by McGraw Property, even if the Federal Lawsuit was not successful.

49. In the event McGraw Property did not receive any such insurance proceeds from the Federal Lawsuit, McGraw Property expected Fortress to pay for all of the work McGraw Property performed.

50. It is unreasonable under the circumstances for Fortress to believe McGraw Property completed substantial roof work for free with no expectation of payment from Fortress if Westchester prevailed in the Federal Lawsuit.

51. The reasonable value of the roof work was $1,111,310.19.

WHEREFORE, Plaintiff McGraw Property Solutions, LLC, respectfully requests that the Court enter a judgment in its favor against Defendant, Fortress Investment Group LLC, for damages, prejudgment interest, costs, and such other and further relief that this Honorable Court may deem just and proper.

## COUNT II
## CLAIM FOR UNJUST ENRICHMENT

52. McGraw Property realleges Paragraphs 1 through 41 as if fully set forth herein.

53. This is an action for unjust enrichment against Fortress and is pled in the alternative to Count I.

54. Fortress was enriched at the expense of McGraw Property by virtue of the substantial and valuable roof services rendered by McGraw Property for the benefit of Fortress.

55. Critically, Fortress knew McGraw Property was performing substantial services for its benefit because Fortress was intimately involved in the process, which was confirmed in the parties' e-mails discussed above. Fortress, as the owner of the Properties, exerted substantial control over McGraw Property, the contractor that completed the roof work. The relationship between the parties was such that McGraw Property's work was subject to Fortress' approval. In this context, Fortress' conduct caused McGraw Property to continue to perform and to complete the roof work.

56. It is against equity and good conscience to permit Fortress to have retained the valuable roofing services performed by McGraw Property, which substantially aided in Fortress selling the Properties. Thus, restitution is required.

57. The services rendered by McGraw Property which unjustly enriched Fortress total $1,111,310.19.

10

WHEREFORE, Plaintiff McGraw Property Solutions, LLC, respectfully requests that the Court enter a judgment in its favor against Defendant, Fortress Investment Group LLC, for damages, prejudgment interest, costs, and such other and further relief that this Honorable Court may deem just and proper.

## DEMAND FOR JURY TRIAL

McGraw Property demands a trial by jury on all Counts so triable.

Dated: January 15, 2025.

        **SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
        *Attorneys for McGraw Property*
        7777 Glades Road, Suite 400
        Boca Raton, FL 33434
        Telephone: (561) 477-7800
        Facsimile: (561) 477-7722

        By: */s/ Joshua B. Alper*
            Joshua B. Alper, Esq.
            S.D.N.Y. Bar No./N.Y. Atty. Reg. No.: 5641220
            Primary E-Mail: jalper@sbwh.law
            Secondary E-Mail: floridaservice@sbwh.law
                                    clanzano@sbwh.law