**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

MCGRAW PROPERTY SOLUTIONS, LLC,

                    Plaintiff,

      -against-

FORTRESS INVESTMENT GROUP LLC,

                  Defendant.

-------------------------------------------------------------------------x

Civil Action No.:
1:24-cv-06859-NRB

Hon. Naomi Reice Buchwald

**Oral Argument Requested**

 

 

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

 

 

Thompson Coburn LLP
488 Madison Avenue, 14th Floor
New York, New York 10022

*Attorneys for Defendant Fortress Investment Group, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

    A.   Non-Party DB Brookview LLC Consummates a UCC Foreclosure of Property in
          Glenview, Illinois ............................................................................................2

    B.   Before DB Brookview Gained Control of Atlas Brookview, Plaintiff Agreed to
          Perform Roofing Work in Exchange for Insurance Benefits from the Previous Owner
          .........................................................................................................................4

    C.   Plaintiff's Unsuccessful Litigation Against Westchester Insurance ............................6

    D.   Procedural History .........................................................................................8

ARGUMENT ................................................................................................................. 9

I.     LEGAL STANDARD .................................................................................................. 9

II.    THE ASSIGNMENT AGREEMENT BARS PLAINTIFF'S CLAIMS ............................ 11

    A.   Quasi-Contract Claims Are Barred Where a Valid, Enforceable Agreement Covers
          the Subject Matter of the Dispute.................................................................11

    B.   The Assignment Agreement Bars Plaintiff's Claims Even Though Defendant Was
          Not a Party to It ...........................................................................................14

III.   PLAINTIFF'S EQUITABLE CLAIMS SHOULD BE DISMISSED BECAUSE
       PLAINTIFF CANNOT ALLEGE THEIR ESSENTIAL ELEMENTS .............................. 15

CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abcon Assocs., Inc. v. Haas & Najarian*,
694 Fed. Appx. 42 (2d Cir. 2017)......................................................................................13

*Ahmed v. Cigna Health Mgmt., Inc.*,
2024 WL 3345819 (S.D.N.Y. 2024).............................................................................13, 15

*Anwar v. Fairfield Greenwich Ltd.*,
891 F. Supp. 2d 548 (S.D.N.Y. 2012)..................................................................................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................9

*Bentley v. Dennison*,
852 F.Supp.2d 379 (S.D.N.Y. 2012)..................................................................................10

*Board of Managers of 15 Union Square West Condo. v. Azogui*,
197 N.Y.S.3d 29 (N.Y.A.D. 1st Dep't 2023)......................................................................14

*Clark-Fitzpatrick v. Long Island R. Co.*,
70 N.Y.2d 382 (N.Y. 1987) ...............................................................................................11

*Gatto v. Fujitec America, Inc.*,
2024 WL 4306787 (S.D.N.Y. 2024)...................................................................................11

*Halebian v. Berv*,
644 F.3d 122 (2d Cir. 2011)...............................................................................................10

*Knapp v. Maron*,
2015 WL 2452409 (S.D.N.Y. 2015)...................................................................................10

*Ludemann Elec. v. Dickran*,
903 N.Y.S.2d 532 (N.Y.A.D. 2d Dep't 2010) ....................................................................13

*Mandarin Trading Ltd. v. Wildenstein*,
944 N.E.2d 1104 (N.Y. 2011)..............................................................................15, 16, 18

*Maor v. Blu Sand Intern. Inc.*,
143 A.D.3d 579 (N.Y.A.D. 2d Dep't 2016) ........................................................................14

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
418 F.3d 168 (2d Cir. 2005)..........................................................................................11, 15

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
  225 F.Supp.3d 201 (S.D.N.Y. 2016)........................................................................14, 15

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)....................................................................................2, 10

*Poindexter v. EMI Record Group Inc.*,
  2012 WL 1027639 (S.D.N.Y. 2012).............................................................................10

*Sebastian Holdings v. Deutsche Bank, AG.*,
  969 N.Y.S.2d 46 (N.Y.A.D. 1st Dep't 2013)...............................................................14

*Washington v. U.S. Tennis Ass'n, Inc.*,
  290 F.Supp.2d 323 (E.D.N.Y. 2003) ..........................................................................10

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
  425 F.Supp.2d 484 (S.D.N.Y. 2006)...........................................................................10

**Statutes**

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 10

Fed. R. Civ. P. 11..............................................................................................................13

FL Stat. § 627.7152 (4)(c).................................................................................................6

Ill. Stat. Ann. 60/7 § 7(a) ..................................................................................................4

Defendant Fortress Investment Group, LLC ("Defendant") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff McGraw Property Solutions, LLC's ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

Plaintiff's claims for unjust enrichment and *quantum meruit* seek to recover payment for roofing work Plaintiff allegedly performed at certain property in Illinois. However, Plaintiff's quasi-contractual claims should be dismissed because it is undisputed that Plaintiff executed an Assignment Agreement (defined below) with the property's then-owner, non-party Atlas Holdings Investment LLC, under which Plaintiff agreed to perform roofing repairs for Atlas Holdings Investment LLC solely in consideration for the owner's assignment of the right to recover its insurance payments. In short, Plaintiff agreed to repair for the owner roofing damage allegedly caused by a storm and to be paid **exclusively by the insurance company**. Under settled law, the existence of a valid and binding contract covering the same subject matter—*i.e.*, Plaintiff's roofing work—bars Plaintiff's quasi-contractual claims.

Consistent with its right to exclusively pursue the insurer, Plaintiff sued the insurance company in June 2021 to recover payment for its roofing services. Am. Compl. ¶ 25. Plaintiff prosecuted its lawsuit against the insurer for three years, arguing that it performed the roofing services because it relied on the insurance company's confirmation of coverage. In May 2024, the United States District Court for the Northern District of Illinois entered a judgment against Plaintiff finding that Plaintiff breached the insurance agreement and failed to establish that the insurer had confirmed coverage. Having failed to recover from the insurer due to its own breach of the insurance policy, and having no recourse against Defendant under its separate agreement with the property's previous owner, Plaintiff impermissibly seeks to hold Defendant liable under quasi-contractual theories.

Because Plaintiff asserts equitable quasi-contractual theories in this case, Plaintiff was required to allege that it reasonably relied on payment from Defendant when performing the work, and that equity and good conscience require holding Defendant liable for payment. But Plaintiff cannot do so here because the Assignment Agreement and Plaintiff's previous lawsuit against the insurer establish that Plaintiff agreed to perform the work solely in exchange for the right to step into the owner's shoes under the insurance policy. Therefore, the insurer was the only party against whom Plaintiff could possibly have had a reasonable "expectation of compensation."  In addition, Plaintiff cannot establish it is entitled to an equitable remedy against Defendant where, as here, a Federal court previously held that Plaintiff was not entitled to payment because of Plaintiff's own wrongful breaches of the insurance policy.

## STATEMENT OF FACTS

The following statement is taken from the allegations pleaded in the Amended Complaint, documents referenced in or "integral" to the Amended Complaint, and documents from prior litigation of which the court may take judicial notice. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

**A.    Non-Party DB Brookview LLC Consummates a UCC Foreclosure of Property in Glenview, Illinois**

This matter concerns work allegedly performed by Plaintiff at an apartment complex in Glenview, Illinois previously known as Brookview Village (the "Property"). As the Amended Complaint omits relevant history and the relationship of the parties, the following briefly summarizes the Property's history and Defendant's involvement.

In September 2017, non-party Atlas Brookview LLC ("Atlas Brookview"), obtained a $64.9 million loan to purchase the Property and became the Property's fee owner. *See* Newman Decl. Ex. A, ¶ 16. The loan was due on October 9, 2020, and was secured by a mortgage on the

Property. *Id.* ¶¶ 2, 20. In addition, another entity that was the sole member and 100% owner of non-party Atlas Brookview, known as Atlas Brookview Mezzanine LLC ("Atlas Mezzanine"), issued a guaranty of the loan and granted the lender a pledge of its 100% membership interest in Atlas Brookview as additional security for the obligations. *Id.* ¶ 25. In December 2019, the original lender sold and assigned its interest in the loan and the related collateral, including the guaranty and pledged equity interests, to non-party DB Brookview LLC ("DB Brookview"), an affiliate of Defendant.

On February 17, 2021, after extensive litigation with Atlas Brookview and Atlas Mezzanine and after the expiration of the loan's maturity date, DB Brookview conducted a UCC foreclosure sale of Atlas Mezzanine's equity interests in Atlas Brookview. *See* Newman Decl. Ex. O. DB Brookview therefore became the owner of Atlas Brookview, which in turn was the fee owner of the Property. Am. Compl. ¶ 17; Newman Decl. Ex. B.

While Plaintiff alleges that Defendant acquired the loan and conducted the UCC foreclosure sale, (*see* Am. Compl. ¶ 10), Defendant has no direct relationship to the Property, did not own the Property or have any direct interest in any of the Atlas entities, and had no direct involvement in the management of the Property. *See* Newman Decl. Ex. C. Defendant's only connection to the Property is that DB Brookview was an affiliate of Defendant, and Plaintiff appears to have named Defendant in this action solely because of that affiliation. As the Amended Complaint concedes, however, neither Defendant nor its affiliate DB Brookview have ever entered into any agreement with Plaintiff.

- 3 -

**B.    Before DB Brookview Gained Control of Atlas Brookview, Plaintiff Agreed to Perform Roofing Work in Exchange for Insurance Benefits from the Previous Owner**

Plaintiff, a Florida limited liability company owned and controlled by Ricky McGraw[1] ("Mr. McGraw") (Am. Compl. ¶ 4), performs "disaster restoration" throughout the United States.[2] Plaintiff alleges that it entered into an Assignment of Benefits Agreement (the "Assignment Agreement") on October 21, 2020 with Atlas Holdings Investment, LLC ("Atlas Holdings"), pursuant to which Plaintiff agreed to repair the Property's roofs after they were damaged by a storm. Am. Compl. ¶¶ 11-15. The Assignment Agreement states that Plaintiff "promises to complete all work paid for by [Westchester] upon future settlement" and to "provide all labor and materials for the scope of work approved by or paid for by [Westchester]." Am. Compl. ¶ 14; Newman Decl. Ex. D. The Assignment Agreement did not obligate Atlas Holdings (or any other Atlas entity) to pay Plaintiff for the roofing work if the insurer denied or contested the claim. Instead, Plaintiff agreed to perform the work solely in exchange for any "future settlement" payments from the insurer, as consideration for Atlas Holdings' assignment of its insurance claim. *Id.* Consistent with this, Plaintiff never filed suit against Atlas Holdings, and never filed a mechanics' lien against the Property to secure payment for the work.[3]

---

[1] Mr. McGraw has been charged with two felonies by the State Attorney for Florida's Twentieth Judicial Circuit for violation of Florida's Fraudulent Insurance Claim and First Degree Grand Theft statutes. Newman Decl. Ex. K, at 1.

[2] Plaintiff does business as "The Commercial Contractor," registered as a fictitious name owned by Plaintiff in Florida. The Commercial Contractor's website claims to have "Over $117 Million in Completed Disaster Restoration" and lists the "Brookview Apartments," the Property at issue in this case, as one of its success stories. *See TCC Projects*, The Commercial Contractor, https://thecommercialcontractor.com/projects/ (last visited Feb. 20, 2025).

[3] Under Illinois law, Plaintiff was required to file a mechanics' lien against the Property within four months of allegedly completing the work in 2021. *See* 770 Ill. Comp. Stat. Ann. 60/7 § 7(a). If Plaintiff truly believed that Atlas Holdings or the Property's subsequent owners were directly liable for the work at issue, it would have filed such mechanics' liens against the Property to secure repayment. Instead, as further explained below, Plaintiff sued and exclusively pursued the insurer for repayment for years after it allegedly finished the work.

Despite never seeking payment from Atlas Holdings, Plaintiff now contends that it "always had an expectation to be paid for all finished work." Am. Compl. ¶ 15. As explained by Mr. McGraw in an unrelated action in Florida,[4] his businesses repair properties that have been damaged by storms and routinely agree to perform repairs pursuant to assignment of benefits agreements with property owners. Newman Decl. Ex. E, ¶ 30. These assignment of benefits agreements "are frequently used in the property damage industry to make the claims process more efficient for the homeowner and the contractor." *Id.* Under the assignment of benefits agreements, the property owners assign to Mr. McGraw or his contractor entities the right to collect on their property insurance claims. Mr. McGraw effectively becomes the owner of the insurance claim, controls the claim process, performs the work without the owner's involvement, and is paid directly by the insurer.

As described by Mr. McGraw in prior litigation, his business model relies on performing the repair work *solely* in exchange for insurance payments:

> Once signed, the contractor "steps into the shoes" of the policyholder and allows the contractor (i) to discuss the insurance claim with the carrier; (ii) to **bill the insurer directly for work performed and materials furnished for the benefit of the insured**; (iii) **to be paid directly by the carrier**; and (iv) if necessary, commence an action against the insurance company to collect amounts due and owing to the contractor.

*Id.*, ¶ 31 (emphasis added). Because Mr. McGraw controls and funds the entire claim process, including any litigation against the insurer, he and his entities bear the risk and costs of performing

---

[4] Mr. McGraw and Plaintiff are sophisticated litigants who have filed hundreds of lawsuits against insurers to collect on assigned property damage claims. They have also been embroiled in litigation with insurers and government actors challenging their predatory and fraudulent practices. Mr. McGraw and Plaintiff have been sued under Florida's RICO Act by Tower Hill Insurance for allegedly scheming to defraud insurers by obtaining assignments of benefits from homeowners and submitting "estimates for roof replacements that were always knowingly inflated and many times wholly unnecessary." Newman Decl. Ex. L, ¶ 50. Tower Hill alleges that Mr. McGraw routinely performs roofing work for a fraction of the costs represented to and passed to the insurers.

the work and pursuing any litigation, including the risk that a claim may be denied or that a court may conclude that Mr. McGraw is not entitled to payment. In fact, in Plaintiff's home state of Florida, contractors who enter into these assignment of insurance benefits agreements are expressly prohibited from later attempting to collect payment from the property owners. *See* FL Stat. § 627.7152 (4)(c) ("An assignee [contractor]: … (c) May not seek payment from the assignor [owner] exceeding the applicable deductible under the policy…").

In the instant action, Plaintiff was retained by Atlas Holdings in October 2020—before DB Brookview consummated its UCC foreclosure and gained control of Atlas Brookview. *See* Am. Compl. ¶¶ 1, 8, 17. As described above, Atlas Holdings was not the fee owner of the Property, which was owned by Atlas Brookview. For purposes of this motion, Plaintiff's allegations that Atlas Holdings was affiliated with Atlas Brookview and was authorized to retain Plaintiff to remediate certain roof damage allegedly caused by an April 2020 storm are accepted as true. Am. Compl. ¶¶ 8-11. But Plaintiff has *not* named Atlas Brookview, Atlas Mezzanine, Atlas Holdings (the only entity it signed a contract with), the insurer, or even DB Brookview, the entity that owned Atlas Brookview following the UCC sale. Instead, Plaintiff named Defendant solely based on its affiliation with DB Brookview.

**C.    Plaintiff's Unsuccessful Litigation Against Westchester Insurance**

Pursuant to its rights under the Assignment Agreement, on June 10, 2021, Plaintiff filed an action in Cook County, Illinois against the insurer of the Property, Westchester Surplus Lines Insurance Company ("Westchester Insurance"), seeking coverage for the work performed at the Property. Am. Compl. ¶ 25. Westchester Insurance later removed the case to the U.S. District Court for the Northern District of Illinois (the "Illinois Action"). *See McGraw Property Solutions LLC a/a/o Atlas Holdings Investment, LLC d/b/a Brookview Village Apartments v. Westchester Surplus Lines Insurance Company*, Case No. 22-cv-00396 (N.D. Ill.).

In the Illinois Action, Plaintiff sought payment for all of the roofing work it performed at the Property. Newman Decl. Ex. F, ¶¶ 7-11; Newman Decl. Ex. M at 2 ("As you know, the roofs have been replaced as a result of the covered event."). Plaintiff submitted an estimate dated August 5, 2020 totalling $1,614,595.08—significantly more than it now claims the work at the Property actually cost. Newman Decl. Ex. G. Plaintiff maintained that "[o]n December 1, 2020, Westchester's adjuster, Cullen Miller notified McGraw Property that coverage was confirmed" and that it would pay for the roof damage repairs. Am. Compl. Ex. F at 2.

Westchester Insurance filed a Counterclaim alleging that Plaintiff failed to cooperate with its investigation and thereby breached the policy, relieving Westchester Insurance "from any obligation to Plaintiff under the terms of the Policy." Newman Decl. Ex. H, ¶ 39. Westchester Insurance argued the storm damage was exaggerated by Plaintiff and pre-dated the policy's coverage. Newman Decl. Ex. I, at 3.

Ultimately, Westchester Insurance prevailed against Plaintiff. On April 19, 2024, the U.S. District Court for the Northern District of Illinois granted Westchester Insurance's summary judgment motion. Am. Compl. ¶ 34. The Court held Plaintiff "failed to perform its obligations under the Policy by not cooperating with Westchester in its investigation of McGraw's claim and not complying with the [Examination Under Oath] clause—a contractual condition precedent to suit." Am. Compl. Ex. F at 8. The court rejected Plaintiff's claim that it had performed the work because it relied on an insurance adjuster's confirmation of coverage. *Id.* at 13. Plaintiff was therefore unable to recover payment for its roofing services from Westchester Insurance because it did not comply with its obligations under the policy.

Although Plaintiff itself is responsible for its inability to recover from the insurer, Plaintiff now wants another bite at the apple, filing this action seeking to recover payment from Defendant.

But Plaintiff does not and cannot allege that it entered into any agreement with Defendant for the performance of *any* work, as the only agreement regarding its services is the Assignment Agreement between Plaintiff and Atlas Holdings.[5] Am. Compl. Ex. A; Newman Decl. Ex. D.  Even if Plaintiff could recover under the Assignment Agreement, such recovery would only be available against Atlas Holdings, as that is the party that executed the Assignment Agreement with Plaintiff. Neither Defendant nor DB Brookview is a party to the Assignment Agreement and, as explained below, Plaintiff cannot assert quasi-contract claims to recover against them for work it performed under a written agreement with a different party with the expectation that Plaintiff would be paid for that work by an insurance company.

**D.    Procedural History**

Plaintiff filed its original Complaint on September 11, 2024, asserting two quasi-contract claims against Defendant. Dkt. No. 1. Initially, Plaintiff alleged that it performed certain work at the Property pursuant to an agreement with Atlas Holdings but did not refer to the Assignment Agreement or disclose the language obligating Plaintiff to perform the subject roofing work in exchange for a "future" recovery of insurance payments. *Id.* Plaintiff also omitted any mention of its extensive litigation against Westchester Insurance. *Id.*

On December 5, 2024, Defendant filed a pre-motion letter request for leave to file this motion to dismiss. *See* Dkt. No. 11. Defendant explained the existence of the Assignment Agreement and referred the Court to Plaintiff's prior litigation against Westchester Insurance. *Id.* at 1-2. Defendant explained that it anticipated moving to dismiss the quasi-contract claims as they were barred by the Assignment Agreement and because Plaintiff could not allege essential

---

[5] As Plaintiff's Amended Complaint admits, Plaintiff was never hired to perform different repairs needed on "flat roofs" at the Property, for which a different company was retained. Am. Compl. ¶¶ 26-27.

elements of each claim. *Id.* at 2-3. On December 10, 2024, Plaintiff filed a letter opposing Defendant's request for leave to file a motion to dismiss, arguing that the Assignment Agreement could not be considered by this Court at the pleading stage because Plaintiff strategically omitted any mention of the agreement in the original Complaint. *See* Dkt. No. 13 at 2. Plaintiff argued that the Assignment Agreement was an "extraneous contract between [Plaintiff] and the prior owner of the property that has nothing to do with the allegations of the Complaint." *Id.*

On January 2, 2025, the Court held a telephone conference with the parties to address Defendant's anticipated motion. *See* Dkt. Minute Entry, Jan. 2, 2025. During the conference, the Court indicated it would permit Plaintiff to amend its Complaint within two weeks and then permit Defendant to file this motion to dismiss. On January 15, 2025, Plaintiff filed an Amended Complaint, which now references the Assignment Agreement and discloses Plaintiff's prior litigation to recover payment for its roofing work from Westchester Insurance. *See* Dkt. No. 17-1 (Plaintiff's Redline of Amended Complaint). The parties then entered into a stipulated briefing schedule which was ordered by the Court on January 24, 2025. Dkt. No. 16. Pursuant to that stipulation and order, Defendant now brings this motion to dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.

**ARGUMENT**

## I.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Anwar v. Fairfield Greenwich Ltd.*, 891 F. Supp. 2d 548, 551 (S.D.N.Y. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plausible claims require "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, while the Court "should accept as true all well-pleaded factual allegations," it "should not credit 'mere conclusory statements' or '[t]hreadbare

recitals of the elements of a cause of action.'" *Knapp v. Maron*, No. 14-CV-02081 NSR, 2015 WL 2452409, at *2 (S.D.N.Y. May 22, 2015).

On a motion to dismiss under Rule 12(b)(6), "[a] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia*, 834 F.3d at 230. "This generally occurs when the material considered is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.'" *Id.* at 231. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. *See id.* If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true. *Poindexter v. EMI Record Group Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. 2012).

The court "may also properly consider 'matters of which judicial notice may be taken.'" *Halebian v. Berv*, 644 F.3d 122, 131 n. 7 (2d Cir. 2011). Judicial notice of public records is appropriate and does not convert a motion to dismiss into a motion for summary judgment. *Bentley v. Dennison*, 852 F.Supp.2d 379, 382 n. 5 (S.D.N.Y. 2012). The Court may take judicial notice of filings and orders in previous cases in both State and Federal courts. *See World Wrestling Ent., Inc. v. Jakks Pac., Inc.,* 425 F.Supp.2d 484, 508 (S.D.N.Y. 2006) (taking judicial notice of filings and orders in Connecticut state court action); *see also Washington v. U.S. Tennis Ass'n, Inc.,* 290 F.Supp.2d 323, 326 (E.D.N.Y. 2003) (stating the court is "permitted to take judicial notice of court documents from previous actions").

- 10 -

## II.    THE ASSIGNMENT AGREEMENT BARS PLAINTIFF'S CLAIMS

### A.    Quasi-Contract Claims Are Barred Where a Valid, Enforceable Agreement Covers the Subject Matter of the Dispute

Plaintiff asserts only two claims, unjust enrichment and *quantum meruit*, which are duplicative and essentially identical. The court may therefore analyze them together as a single quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citing *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.* 102 F.3d 660, 663 (2d Cir. 1996)).

New York law does not permit recovery in quasi-contract where there is a "valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Id.*; *See also Clark-Fitzpatrick v. Long Island R. Co.,* No. 265, 70 N.Y.2d 382, 388 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). Here, Plaintiff does not dispute (1) the existence of the Assignment Agreement or (2) that its scope covers the same subject matter as Plaintiff's quasi-contractual claims, *i.e.*, its obligation to perform roofing work at the Property. *Gatto v. Fujitec America, Inc.*, 2024 WL 4306787, at *15 (S.D.N.Y. 2024) ("Unless there is a dispute over the existence of a contract or the contract does not cover the dispute at issue, a contract will not be implied in fact."). Plaintiff sued Westchester Insurance expressly as assignee of Atlas Holdings Investment, LLC, and argued that it was entitled to collect insurance payments under the policy for the work it performed at the Property. Newman Decl. Ex. F, ¶¶ 9-11. Accordingly, Plaintiff cannot now dispute that the Assignment Agreement is valid.

Further, Plaintiff cannot dispute that the subject matter of its unjust enrichment and *quantum meruit* claims is the same subject matter covered by the Assignment Agreement: Plaintiff's performance of all the roofing repairs at the Property. The gravamen of Plaintiff's quasi-

contract claims is that Plaintiff "performed all of the roofing services related to the Properties in good faith." Am. Compl. ¶ 46; *see id.* ¶ 54 (alleging Defendant was enriched "by virtue of the substantial and valuable roof services rendered by [Plaintiff]"). The Assignment Agreement's subject matter is the same because it obligated Plaintiff (i) "to provide all services and furnish all materials necessary to preserve and protect" the Property, (ii) to "complete all work paid for by [Westchester Insurance] upon future settlement," and (iii) to "provide all labor and materials for the scope of work approved by or paid for by [Westchester Insurance]." Am. Compl. Ex. A; Newman Decl. Ex. D. Accordingly, the Assignment Agreement unequivocally covers *all* of the roofing work performed by Plaintiff.

Plaintiff's allegation that "the [Assignment Agreement] does not state [Plaintiff's] exclusive method of payment for work completed is through any insurance proceeds paid for by Westchester," (Am. Compl. ¶ 15), is contradicted by the plain text of the contract, which states Plaintiff received the assignment of insurance benefits "in consideration for these repairs and [Plaintiff's] promise to complete all work **paid for by my insurance carrier upon future settlement.**" Am. Compl. Ex. A (emphasis added). Even if Plaintiff were correct—and it is not— that the Assignment Agreement obligated Atlas Holdings to pay for its services if the insurance company denied the claim, the Assignment Agreement would still bar the quasi-contract claims Plaintiff asserts in this action. *See Philip Morris Cap. Corp.*, 2021 WL 797671, at *8 (Unjust enrichment and *quantum meruit* claims dismissed where "far from disputing the existence of a valid and binding contract, [Plaintiff's] argument presumes the existence and validity of the parties' contracts.").

Moreover, Plaintiff pursued Westchester Insurance for years in the Illinois Action to recover for the *entirety* of its roofing work.[6] Newman Decl. Ex. F, ¶¶ 7-11; Newman Decl. Ex. M. Because the Assignment Agreement addresses Plaintiff's obligation to perform all of the roofing repairs necessary to protect the Property, Plaintiff's unjust enrichment and *quantum meruit* claims are barred and should be dismissed. *Abcon Assocs., Inc. v. Haas & Najarian*, 694 Fed. Appx. 42, 44 (2d Cir. 2017) ("There can be no recovery in *quantum meruit* in this case because the valid and enforceable agreement between the parties already addressed the conditions under which H&N would be paid for its legal services.").

Finally, Plaintiff cannot sustain its quasi-contract claims against Defendant by arguing that the terms of the Assignment Agreement preclude it from recovering from Atlas Holdings. Nor can Plaintiff rely on the fact that it was unable to recover against Westchester Insurance because Plaintiff breached the policy. The existence of a valid agreement covering the scope of a dispute bars quasi-contractual claims even where the terms of that agreement barred Plaintiff's recovery. *See Ahmed v. Cigna Health Mgmt., Inc.,* 2024 WL 3345819, at *7 (S.D.N.Y. 2024) (quasi-

---

[6] Although omitted from the original Complaint, Plaintiff's Amended Complaint now includes the allegation that Plaintiff performed additional work and purchased additional materials "that were never covered by Atlas' policy, but were required to be purchased and implemented as part of the roof replacements at issue in this case." Am. Compl. ¶ 16. But Plaintiff pursued Westchester Insurance for all of its repair work and fails to point to any alleged work that was not actually covered by the policy. Moreover, this bald allegation is contradicted by the Assignment Agreement, which expressly obligated Plaintiff to "provide **all services and furnish all materials necessary to preserve and protect [the] property** from further damage." Am. Compl. ¶ 13 (emphasis added). Plaintiff cannot allege that it performed any work that was not covered by the Assignment Agreement, and "a contractor may not recover [under quasi-contract] for any purported extra work that was actually covered by the terms of the original contract." *Ludemann Elec. v. Dickran*, 903 N.Y.S.2d 532, 534 (N.Y.A.D. 2d Dep't, June 22, 2010) (holding express agreement between the parties precluded quasi-contractual claims). As the record in the Illinois Action against Westchester Insurance includes evidence of Plaintiff's counsel submitting the entirety of its roofing repair work to the insurer for payment, Defendant respectfully submits that Plaintiff's allegations are inconsistent with its obligations under Fed. R. Civ. P. 11 and reserves all rights thereunder. *See* Newman Decl. Ex. G.

contractual claims barred by valid agreement even where the "contract barred a breach-of-contract claim against the actual party to the contract"); *see also Sebastian Holdings v. Deutsche Bank, AG.,* 969 N.Y.S.2d 46, 47 (2013) (quasi-contract claims dismissed where there was a dispute about agreements' interpretation, but not "the validity or enforceability of those agreements").

Here, Plaintiff's strategic decision to pursue quasi-contractual claims was made in apparent recognition that Defendant would not be liable under the terms of the Assignment Agreement. Under settled law, however, the Assignment Agreement's existence bars Plaintiff's quasi-contractual claims whether brought against Defendant, Atlas Holdings, or DB Brookview.

**B.      The Assignment Agreement Bars Plaintiff's Claims Even Though Defendant Was Not a Party to It**

Plaintiff also cannot salvage its claims by arguing that Defendant was not a party to the Assignment Agreement, which was between Plaintiff and the Property's prior owner, Atlas Holdings. Quasi-contract claims are barred "if there is a valid contract governing the subject matter of the dispute, **even if one of the parties to the claim is not a party to that contract.**" *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F.Supp.3d 201, 207 (S.D.N.Y. 2016) (Buchwald, J.) (emphasis in original); *see also Maor v. Blu Sand Intern. Inc.*, 143 A.D.3d 579, 579 (N.Y.A.D. 2d Dep't 2016) (dismissing unjust enrichment claim "since there can be no quasi-contract claim against a third-party nonsignatory to a contract that covers the subject matter of the claim"). "The case law is clear that even where a defendant is a third-party nonsignatory to a contract, there can be no cause of action sounding in quasi-contract where, as here, there is a valid contract in place and the contract covers the subject matter of the dispute." *Board of Managers of 15 Union Square West Condo. v. Azogui*, 197 N.Y.S.3d 29, 30 (N.Y.A.D. 1st Dep't. 2023).

In *Mueller*, this Court dismissed an unjust enrichment claim by an art buyer against an independent art advisor, holding the claim was barred by the existence of a purchase agreement

- 14 -

between the buyer and an art gallery. *Mueller*, 225 F. Supp. 3d at 207 (Buchwald, J.). The Court explained that although the defendant-advisor was not a party to the agreement between the buyer and the art gallery, that agreement clearly governed the parties' obligations regarding the sale and payment for the artwork. *Id.* (citing *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 203 (S.D.N.Y. 2011) (listing cases)). As this Court explained, "[n]umerous decisions applying New York law" have reached the same result. *Id.*; *see also Ahmed v. Cigna Health Management, Inc.,* 2024 WL 3345819, at *6 (S.D.N.Y. 2024).

Here, likewise, Plaintiff seeks to recover payment for services rendered pursuant to its agreement with Atlas Holdings, and the Assignment Agreement clearly governs the parties' obligations regarding payment for Plaintiff's roofing services. Accordingly, Plaintiff's quasi-contract claims to recover for its roofing services are barred by the Assignment Agreement.

## III.  PLAINTIFF'S EQUITABLE CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT ALLEGE THEIR ESSENTIAL ELEMENTS

Plaintiff's unjust enrichment and *quantum meruit* claims must also be dismissed because Plaintiff cannot allege the fundamental element of each claim. To state an unjust enrichment claim, Plaintiff was required to allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Mueller*, 225 F.Supp.3d at 207. Likewise, *quantum meruit* requires Plaintiff to allege "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc.* 418 F.3d at 175. As quasi-contractual claims are equitable, the essential inquiry "is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011). Thus, courts will dismiss unjust

enrichment claims where a plaintiff cannot allege "a relationship between the parties that could have caused reliance or inducement." *Id.* at 1111.

The Assignment Agreement bars Plaintiff from establishing that Defendant was enriched "at Plaintiff's expense" or that Plaintiff had a reasonable "expectation of compensation" from Defendant. The Assignment Agreement unequivocally provides that Plaintiff performed the roofing work solely in exchange for an "expectation of compensation" from Westchester Insurance. Plaintiff therefore would be unable to recover from Atlas Holdings—the only party to the Assignment Agreement—under contract or quasi-contract theories.

Defendant's connection to Plaintiff and to the Property is even more attenuated. Defendant has no agreement with Plaintiff and has never owned the Property. Plaintiff does not name the entity that actually owned the Property after Atlas Holdings, DB Brookview, because DB Brookview likewise had no agreement with Plaintiff and any quasi-contract claims against DB Brookview would be barred for the same reasons they are barred against Defendant. Defendant's only connection to the Property is that it was affiliated with DB Brookview. Absent an agreement or direct connection to the Property or to Plaintiff, Plaintiff cannot allege that it reasonably relied on payment from Defendant. *See Mandarin Trading Ltd.* 944 N.E.2d at 1110-11.

Separately, Plaintiff's business model is built on assuming the risk and expense of litigation against insurers while waiving any recovery from the owners through its assignment agreements.[7] Other courts have held that Mr. McGraw's businesses were not entitled to recover claims against insurers. For example, in 2023, a final judgment was entered in Florida against SFR

---

[7] Plaintiff's website explains that it will "inspect your property **free of charge** to identify and document the full extent of repairs you need. If necessary, at no cost to you, we will hire experts for any engineering or forensic analysis. These reports will be provided to your insurance carrier for use in the process of restoring your property to pre-disaster condition as soon as possible." *About TCC*, The Commercial Contractor, https://thecommercialcontractor.com/about/ (last visited Feb. 20, 2025) (emphasis in original).

Services, LLC ("SFR")—owned and controlled by Mr. McGraw—finding that SFR "intentionally concealed the true, fixed value of the roof replacements," failed to provide a subcontractor's invoice showing the true cost of the work to the insurer, and instead "continu[ed] to rely upon the Elite Claims Estimate despite the fact that it grossly exceeded the true value of the work," and even "required [the subcontractor] to misrepresent the value of the roof replacement in its submission to the Village of Estero Building Department." Newman Decl. Ex. J, at 18-19. In each of these cases, Mr. McGraw and his entities, including Plaintiff, performed work solely in exchange for insurance benefits and bore the risk of an insurance company denying or extensively litigating a claim. Accordingly, Plaintiff cannot now maintain that it always expected payment from Atlas Holdings, much less from Defendant who has no direct connection to Plaintiff or the Property.

Plaintiff's litigation against Westchester Insurance further confirms that it performed the roofing work solely in exchange for anticipated insurance payments. In pursuing the Illinois Action against Westchester Insurance, Plaintiff expressly admitted that it commenced and completed the roofing work because it believed that "on December 1, 2020, Westchester's independent adjuster Cullen Miller notified McGraw that coverage was confirmed and that Westchester would pay for some of the damages to the property caused by the reported event." Am. Compl. Ex. F at 2. Thus, Plaintiff has expressly admitted that it relied on a future insurance recovery—not Defendant—to pay for its roofing work.

Finally, Plaintiff cannot establish that it is entitled to equitable relief from Defendant because the Illinois court concluded that Plaintiff could not recover from Westchester Insurance as a result of Plaintiff's own wrongful conduct.  The Northern District of Illinois held that Plaintiff breached the policy "by not cooperating with Westchester in its investigation of McGraw's claim

and not complying with the EUO clause—a contractual condition precedent to suit." Am. Compl.

Ex. F at 8 (holding that Westchester Insurance established its "failure to cooperate" defense). Thus,

Plaintiff's inability to collect payment for its roofing work was caused solely by its own breach of

the policy, and Plaintiff cannot establish that equity or good conscience should require Defendant

to pay for Plaintiff's wrongful conduct. *Mandarin Trading Ltd.* 944 N.E.2d at 1110.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Amended

Complaint be dismissed in its entirety, with prejudice.

Dated: February 21, 2025
        New York, New York

**THOMPSON COBURN LLP**

*/s/ Zachary G. Newman*

By: Zachary G. Newman, Esq.
    Jose A. Fernandez, Esq.

    488 Madison Avenue, 14th Floor
    New York, New York 10022
    Tel.: 212.478.7200
    Fax: 212.478.7400
    znewman@thompsoncoburn.com
    jfernandez@thompsoncoburn.com

    *Counsel for Defendant*
    *Fortress Investment Group LLC*

- 18 -

- 19 -

## CERTIFICATION OF WORD COUNT

I hereby certify that the word count of this memorandum complies with the word limits

of Local Rule 7.1.  According to the word-processing system used to prepare this memorandum,

the total word count, excluding the caption and signature block is 5,710 words.

Dated:        February 21, 2025
              New York, New York

                                         */s/ Zachary G. Newman*
                                         Zachary G. Newman