UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MCGRAW PROPERTY SOLUTIONS, LLC,

               Plaintiff,

         - against -

FORTRESS INVESTMENT GROUP LLC,

               Defendant.
------------------------------------X

**MEMORANDUM AND ORDER**
24 Civ. 6859 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    On April 7, 2020, a storm in Glenview, Illinois damaged the roofs of five properties, then-owned by Atlas Holdings Investment, LLC and its affiliates (collectively, "Atlas").  In October 2020, plaintiff McGraw Property Solutions, LLC ("plaintiff" or "McGraw") agreed to repair these roofs and "provide all labor and materials for the scope of work approved by or paid for by" Atlas's insurance carrier, Westchester Surplus Insurance Company ("Westchester").

    In February 2021, prior to the completion of the roofing work, defendant Fortress Investment Group LLC ("Fortress")[1] allegedly acquired the at-issue properties from Atlas, and according to plaintiff's amended complaint, "continued to retain McGraw . . . to complete the roofs on the five buildings."  Ultimately, McGraw claims it was never paid for its roofing work.

---

[1]    Fortress contends that it has no direct relationship to the property, as its affiliate acquired the property.  ECF No. 20 at 16.  For purposes of this opinion, this asserted factual dispute is immaterial.

Pursuant to the executed agreement between McGraw and Atlas, McGraw first sued Atlas's insurer, Westchester, for payment. See No. 22-cv-396 (N.D. Ill.) ("Illinois Action"). The court granted summary judgment in favor of Westchester based on its determination that, as a matter of law, "McGraw failed to perform its obligations under the Policy by not cooperating with [the insurer] in its investigation of McGraw's claim and not complying with the [Examination Under Oath] clause—a contractual condition precedent to suit." McGraw Property Solutions LLC v. Westchester Surplus Lines Insurance Company, No. 22 Civ. 396, 2024 WL 1702680, at *4, 7 (N.D. Ill. 2024) ("Westchester Opinion").

Having failed to obtain redress from Westchester, plaintiff filed the instant action against Fortress, asserting claims of quantum meruit and unjust enrichment. Fortress moves to dismiss. For the following reasons, the Court grants defendant's motion.

**BACKGROUND**

## I.   Factual Background[2]

On April 7, 2020, "Atlas suffered storm damage to its

---

[2]   Unless otherwise noted, the facts considered and recited herein are drawn from plaintiff's amended complaint and are accepted as true for the purposes of the instant motion. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). In evaluating the sufficiency of a complaint, a district court may also consider documents that are attached to the complaint, incorporated by reference in the complaint, or otherwise integral to the complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). In addition, "courts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).

[p]roperties known as Brookview Village Apartments." ECF No. 14
("AC") ¶ 11. Thereafter, Atlas submitted a claim to its insurer,
Westchester, and assigned its claim to McGraw on October 21, 2020.
Id. ¶¶ 11-12. McGraw attaches a copy of the assignment contract,
which it refers to as the "Assignment of Benefits" or "AOB," as
Exhibit A to its amended complaint. See ECF No. 14-1 ("AOB").
The AOB states as follows:

---

**ASSIGNMENT OF INSURANCE CLAIM**

I, the owner/policyholder ("Customer") of the above property, authorize McGraw Property Solutions, LLC ("Company"), to enter my property and provide all services and furnish all materials necessary to preserve and protect my property from further damage. Additionally, in consideration for these repairs and Company's promise to complete all work paid for by my insurance carrier upon future settlement, I agree to assign my insurance claim to Company, subject to the terms and conditions in this contract.

Customer assigns all insurance rights, benefits, proceeds, claims, causes of action, and supplementary claims under all applicable insurance policies (collectively, "Benefits") to Company for the Services rendered or to be rendered by Company. Company will provide all labor and materials for the scope of work approved by or paid for by Carrier (collectively, "Services"). Customer directs Carrier to release all information requested by Company, its representatives, and Company's attorney to obtain the Benefits from Carrier. Customer hereby authorizes and unequivocally directs Carrier to deliver any and all payments and make any and all check(s) payable related to the Claim solely to Company.

This Assignment also includes any right of the Customer to collect for extra contractual damages, consequential damages, common law damages, and statutory damages. This Assignment allows Company to file a lawsuit in Company's name to collect proceeds assigned herein.

---

Id.; see also AC ¶ 13. McGraw began its roof repair and replacement
work while Atlas owned the at-issue properties. AC ¶ 19.

Following Atlas's default on a loan and a UCC foreclosure
sale of Atlas's equity interest in the properties, Fortress
allegedly acquired the at-issue properties in February 2021. Id.

-3-

¶¶ 10, 17.[3]  According to the amended complaint, "Fortress continued to retain McGraw . . . to complete the roofs on the five buildings."  AC ¶ 19.

McGraw alleges that it had "extensive communications regarding the coordination of the roofing work" with Fortress. Id. ¶ 20.  More specifically, Fortress allegedly: (1) "requested status updates regarding the roof work," id. ¶ 21, (2) "requested an estimated date of completion for all the roof repair work," id. ¶ 22, (3) "required that [Fortress] be listed as an additional insured on McGraw Property's Certificate of Liability Insurance," id. ¶ 20, (4) "exchanged e-mails about completing punch list items regarding the completed pitched roofs," id. ¶ 26, and (5) "paid another roofing company to complete . . . other roofs," id. ¶ 27.

In June 2021, McGraw sued Westchester in Illinois.  Id. ¶ 25; see Illinois Action.  McGraw informed Fortress of the insurance claim as well as the Illinois Action.  AC ¶¶ 24-25.  In the Illinois Action, McGraw alleged that it had "inspected . . . all of the roofing systems" and concluded that "all . . . need[ed] to be replaced" before further alleging that there was a dispute "over the amount of loss" between it and Westchester.  No. 22-cv-396,

---

[3]    As mentioned earlier, Fortress contends that it has no direct relationship to the property, since its affiliate, DB Brookview, acquired the property.  ECF No. 20 at 16.  Also, as noted earlier, this asserted factual dispute is immaterial to this opinion.

ECF No. 1-1 ¶¶ 16, 17.  To support these allegations, McGraw attached an estimate prepared by its public adjuster, which concluded that $1,614,595.08 was the value of the extensive work needed on the properties.  See No. 22-cv-396, ECF No. 1-5 at ECF p. 28.  McGraw also alleged "[i]t is Westchester's duty to pay the amount due under the Policy for the covered loss, including the cost to repair/replace the covered damage to the insured premises" and "[t]his breach of the insurance contract was and is the direct and proximate cause of damages to [p]laintiff."  No. 22-cv-396, ECF No. 1-1 ¶¶ 27, 29.

Separate from the claims in the Illinois Action, McGraw sent an invoice to Fortress in October 2021 for $1,111,310.19 on the grounds that it "always expected to be paid for its completed work" "[i]n the event McGraw Property did not receive any such insurance proceeds from the Federal Lawsuit."  AC ¶¶ 28, 49; see also id. ¶ 48, 50 (similar).  McGraw asserts that it never "agree[d] to work for free," and that "[b]y the end of 2021, McGraw . . . finished all of the roof work and Fortress was satisfied with the results." Id. ¶¶ 28, 29.  Fortress sold the properties in December 2022. Id. ¶ 32.

On April 19, 2024, the Honorable Andrea R. Wood of the Northern District of Illinois granted Westchester's motion for summary judgment.  See Westchester Opinion at *1, *7; AC ¶ 34; ECF

No. 14-6.[4]  Westchester moved for summary judgment and argued that "McGraw failed to satisfy a condition precedent to suit under the [Insurance] Policy—specifically, McGraw failed to appear for an [Examination Under Oath]."  Westchester Opinion at *3.  The court found that, as a matter of law, "McGraw failed to perform its obligations under the Policy by not cooperating with [the insurer] in its investigation of McGraw's claim and not complying with the [Examination Under Oath] clause—a contractual condition precedent to suit."  Id. at *4, *7.

Approximately two weeks after the Westchester Opinion was issued, McGraw again sent Fortress its invoice for $1,111,310.19 on May 6, 2024.  AC ¶¶ 35, 36.  Fortress responded the same day, advising McGraw that it had sold the properties and would not be paying the invoice.  Id.

## II.  Procedural History

Plaintiff commenced this action on September 11, 2024, asserting two claims against Fortress: (1) a breach of implied in-fact contract for quantum meruit, ECF No. 1 ¶¶ 30-35; see also AC ¶¶ 42-51; and (2) unjust enrichment in the alternative, ECF No. 1 ¶¶ 36-40; see also AC ¶¶ 52-57.

---

[4]    Plaintiff attaches the Westchester Opinion as Exhibit F to its amended complaint.  See ECF No. 14-6.  Page references to the Westchester Opinion are to its Westlaw citations.

In accordance with this Court's Individual Practices, Fortress submitted a pre-motion letter describing its anticipated motion to dismiss. ECF No. 11. Among other assertions, Fortress argued that: (1) plaintiff omitted key information from its initial complaint regarding the Assignment of Benefits and Illinois Action; and (2) the Assignment of Benefits and Illinois Action meant that plaintiff could not allege essential elements of its claims. Id. In response, plaintiff asserted that the Illinois Action is irrelevant to the current case, that the defendant is prematurely injecting factual issues at the pleading stage, and that the Court is limited to the four corners of the Complaint when assessing a motion to dismiss. ECF No. 13 at 2, 3.

The Court held a conference on January 2, 2025 and granted plaintiff leave to file an amended complaint before Fortress brought its motion. In the amended complaint, plaintiff added allegations and exhibits pertaining to the Assignment of Benefits and Illinois Action. See, e.g., AC ¶¶ 11-16, 24-25; see also ECF No. 17-1 (redline comparing amended complaint to initial complaint); ECF No. 14-1, 14-3, 14-4, 14-5, 14-6 (exhibits relating to AOB and Illinois Action).

Fortress submitted its motion to dismiss, ECF No. 18, and a supporting memorandum of law, ECF No. 20 ("Def. Br."). Plaintiff opposed defendants' motion to dismiss, ECF No. 24 ("Opp."), and

Fortress later replied to plaintiff's opposition, ECF No. 27 ("Reply").

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded fact[s] . . . allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court "must accept as true all factual claims in the complaint and draw all reasonable inferences in the plaintiff's favor." Sacerdote v. Cammack Larhette Advisors, LLC, 939 F.3d 498, 507 (2d Cir. 2019). However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

Fortress moves to dismiss, arguing that plaintiff's claims are insufficiently pled. See Def. Br. 15-18; Reply 5-11.[5] As

---

[5] Fortress also argues that plaintiff's quantum meruit and unjust enrichment claims are barred by the AOB. See Def. Br. 11-15; Reply 1-5. This argument is unavailing because the AOB only covers work "approved by or paid for by [the] Carrier," see AOB, and does not necessarily cover "additional services and

mentioned before, plaintiff brings two claims against Fortress: (1) a breach of implied in-fact contract for quantum meruit, AC ¶¶ 42-51; and (2) in the alternative, unjust enrichment, id. ¶¶ 52-57.  We assess each claim separately.

## I.    Breach of Implied In-Fact Contract for Quantum Meruit[6]

In its first claim, plaintiff alleges that the conduct of McGraw and Fortress created an implied in-fact contract, whereby McGraw agreed to perform roofing services related to the at-issue properties and Fortress agreed to pay for this work "[i]n the event McGraw Property did not receive any such insurance proceeds from the Federal Lawsuit."  AC ¶¶ 42-51.

"An implied contract requires the same elements as an express contract, including consideration, mutual assent, legal capacity and legal subject matter."  Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc., No. 23 Civ. 2349 (JGLC), 2023 WL 7529768, at *4

---

materials used that were outside the insurance policy," Opp. at 15-18.  Stated otherwise, the AOB did not bar these parties from forming a contract (express or implied) whereby Fortress agreed to pay for either: (a) all of the roofing work "[i]n the event McGraw Property did not receive any such insurance proceeds from the Federal Lawsuit," AC ¶¶ 42-51; or (b) "certain work items" "that were never covered by Atlas' policy," id. ¶ 16.  Moreover, Fortress never argues that it is the successor of interest as it relates to the AOB, instead contending that Fortress's connection to the properties is "attenuated" as "it was affiliated with DB Brookview" which owned the properties.  Def. Br. at 16.

[6]    As plaintiff notes in its memorandum, a quantum meruit claim is ambiguous and "may mean (1) that there is a contract 'implied in fact' to pay the reasonable value of the services, or (2) that, to prevent unjust enrichment, the claimant may recover on a quasi-contract (an 'as if' contract) for that reasonable value."  Opp. at 9 (citation and quotation marks omitted).  The Court analyzes plaintiff's claim pursuant to the in-fact contract standard that plaintiff asserts is relevant.  See id. at 9-11.

(S.D.N.Y. Nov. 13, 2023) (citing <u>Maas v. Cornell Univ.</u>, 721 N.E.2d
966, 970 (1999)), <u>appeal dismissed,</u> No. 23-7837, 2024 WL 4866898
(2d Cir. May 28, 2024).  "Unlike an express contract, an implied-
in-fact contract arises 'when the agreement and promise have simply
not been expressed in words,' but 'a court may justifiably infer
that the promise would have been explicitly made, had attention
been drawn to it.'"  <u>Nadel v. Play-By-Play Toys & Novelties, Inc.</u>,
208 F.3d 368, 377 n.5 (2d Cir. 2000) (citation omitted).  Further,
"[i]n order to recover in quantum meruit, New York law requires a
claimant to establish (1) the performance of services in good
faith, (2) the acceptance of the services by the person to whom
they are rendered, (3) an expectation of compensation therefor,
and (4) the reasonable value of the services."  <u>Revson v. Cinque
& Cinque, P.C.</u>, 221 F.3d 59, 69 (2d Cir. 2000) (citation and
quotation marks omitted); <u>see also</u> Opp. at 10 (similar).

     Plaintiff has failed to adequately allege three elements of
its claim.  First, the parties' pled conduct does not give rise to
an inference of mutual assent.  "The conduct of a party may
manifest assent if the party intends to engage in such conduct and
knows that such conduct gives rise to an inference of assent."
<u>Maas</u>, 721 N.E.2d at 970.  Such conduct must allow "a court [to]
justifiably infer that the promise would have been explicitly made,
had attention been drawn to it."  <u>Id.</u>

To meet this standard at the motion to dismiss stage, plaintiff's amended complaint must include sufficient factual matter to support a plausible inference of mutual assent. Aside from plaintiff's conclusory allegation that both parties "knew, or under the circumstances should have known, that the other party understood the conduct as creating a contract," AC ¶ 45, plaintiff relies on the following allegations to infer mutual assent; namely, that Fortress: (1) "requested status updates regarding the roof work," id. ¶ 21, (2) "requested an estimated date of completion for all the roof repair work," id. ¶ 22, (3) "required that [Fortress] be listed as an additional insured on McGraw Property's Certificate of Liability Insurance," id. ¶ 20,[7] (4) "exchanged e-mails about completing punch list items regarding the completed pitched roofs," id. ¶ 26, and (5) "paid another roofing company to complete . . . other roofs," id. ¶ 27.[8] None of these actions give

---

[7]    Plaintiff extensively relies on this allegation in its opposition.  See AC ¶ 20; Opp. at 4, 5, 11.  However, while this allegation (if proven true) undermines Fortress's assertion that it is not the correct corporate entity to sue, plaintiff concedes that adding Fortress to the liability insurance was done "to cover any damages incurred by Fortress related to McGraw Property's work," Opp. at 4, meaning that it does not cover payment for McGraw's roofing work and does not establish mutual assent, see, e.g., AC ¶ 55.

[8]    In its opposition, plaintiff emphasizes that Fortress paid another company for flat roofs.  Opp. at 6-7, 8.  Fortress's relationship with another company regarding separate roofing work does not tend to prove any fact about Fortress's alleged relationship with McGraw concerning the at-issue roofing work.

     Further, plaintiff repeatedly relies on its allegation that McGraw's roof work was "coordinated, controlled by, and subject to Fortress' approval."  AC ¶ 18; see also id. ¶ 45 (similar); Opp. at 4, 7, 12, 15, 17 (similar).  Conclusory allegations to this effect are insufficient to withstand a motion to dismiss.  See Brown, 756 F.3d at 225; Iqbal, 556 U.S. at 678.

rise to an inference that Fortress agreed to pay for the roofing work "[i]n the event McGraw Property did not receive any such insurance proceeds from the Federal Lawsuit."  AC ¶ 49.

Moreover, plaintiff has not presented a circumstance where "a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it."  Maas, 721 N.E.2d at 970 (emphasis added).  Despite the fact that plaintiff brought the Illinois Action to Fortress's attention, AC ¶ 25, the parties did not make an explicit promise to each other, see Leibowitz v. Cornell Univ., 445 F.3d 586, 593 (2d Cir. 2006) (dismissing implied-in-fact contract claim because plaintiff did "not allege with respect to this period of time mutual assent of any intent on the part of Cornell to enter into a contractual arrangement with her").

Second, plaintiff has failed to allege consideration.  Under New York law, a "promise to perform a pre-existing legal obligation does not amount to consideration."  Murray v. Northrop Grumman Info. Tech., Inc., 444 F.3d 169, 178 (2d Cir. 2006) (dismissing implied in fact contract claim because "[w]ithout consideration exchanged," "there was no contract . . . to breach").  Here, plaintiff was already performing roofing work pursuant to the AOB before Fortress allegedly acquired the properties, AC ¶ 19, and plaintiff cannot rely on this work as consideration for an in-fact

contract with Fortress.

Third, plaintiff has failed to allege that it had a reasonable expectation of compensation from Fortress. See, e.g., Vioni v. Am. Cap. Strategies, Ltd., 508 F. App'x 1, 2 (2d Cir. 2013) ("Both parties must understand that the party performing the services has a reasonable expectation of compensation for those services."). While McGraw alleges that it never "agree[d] to work for free," AC ¶ 28; see also id. ¶ 50 (similar), it is unreasonable to require Fortress to pay McGraw "[i]n the event McGraw Property did not receive any such insurance proceeds from the Federal Lawsuit," id. ¶ 49, when Fortress and McGraw had conversations about the Illinois Action, id. ¶ 25, but never formally agreed to such an arrangement.

Thus, plaintiff's implied in-fact contract for quantum meruit claim is dismissed.

## II. Unjust Enrichment

Plaintiff pleads an unjust enrichment claim in the alternative. AC ¶¶ 52-57. To state an unjust enrichment claim under New York law, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011) (citation and quotation marks omitted). We assess the first and third elements

out of order, and address equity first.[9]

First, plaintiff has not adequately alleged that any enrichment was "unjust." While Fortress or its related company is no doubt the "beneficiary" of McGraw's roofing work, that result lays at the feet of McGraw. In the Illinois Action, the Court held that it was McGraw's failure to cooperate with Westchester which barred its recovery. Westchester Opinion at *4, *7. It would be unjust to require Fortress to pay McGraw now that McGraw is unable to obtain payment from a third party. Cf. Croce v. St. Joseph's Coll., 155 N.Y.S.3d 51, 57-58 (N.Y. Sup. Ct. 2021) (dismissing case where "plaintiff fail[ed] to allege any facts showing that 'equity and good conscience' require" payment when "she has failed to state a breach of a contractual obligation" for same payment), aff'd sub nom. Croce v. St. Joseph's Coll. of New York, 219 A.D.3d 693 (2d Dep't 2023).

Second, plaintiff has not sufficiently pled that its services were meant to enrich Fortress. In bringing a claim of unjust enrichment, "[i]t is the plaintiff's burden to demonstrate that services were performed for the defendant resulting in the latter's unjust enrichment, and the mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to

---

[9]    Outside of the previously rejected argument that the AOB bars plaintiff's claims, there is no meaningful dispute that the roofing work was done at plaintiff's expense. See Def. Br. at 15; Reply 8-11.

-14-

establish a cause of action for unjust enrichment." Afroze Textile
Indus. (Priv.) Ltd. v. Ultimate Apparel, Inc., No. 07 Civ. 3663
(JFB) (AKT), 2009 WL 2167839, at *7 (E.D.N.Y. July 20, 2009)
(citation and quotation marks omitted; emphasis in original).
Stated otherwise, "'if services were performed at the behest of
someone other than the defendant, the plaintiff must look to that
person for recovery.'" Piccoli A/S v. Calvin Klein Jeanswear Co.,
19 F. Supp. 2d 157, 167 (S.D.N.Y. 1998) (quoting Kagan v. K-Tel
Ent., Inc., 172 A.D.2d 375, 376, 568 N.Y.S.2d 756 (1st Dep't
1991)).

McGraw cannot plausibly carry this burden.  While McGraw
alleges that it never "agree[d] to work for free," AC ¶ 28, McGraw
agreed to work in exchange for payment from Westchester, see AOB,
and has alleged, in this action and in another action, that it
performed this work primarily for the benefit of Westchester, see
AC ¶¶ 19, 28, 48, 49, 50; No. 22-cv-396, ECF No. 1-1 ¶¶ 27, 29
(alleging "[i]t is Westchester's duty to pay the amount due" and
"[t]his breach of the insurance contract was and is the direct and
proximate cause of damages to [p]laintiff.").

Similarly, "mere knowledge" of a benefit "is insufficient to
support a claim for unjust enrichment," as a plaintiff must allege
"a sufficiently close relationship with the other party." Georgia
Malone & Co. v. Rieder, 973 N.E.2d 743, 746 (2012); see also NSI

<u>Int'l, Inc. v. Horizon Grp. USA, Inc.</u>, No. 20 Civ. 8389 (JGK), 2021 WL 3038497, at *8 (S.D.N.Y. July 16, 2021) (dismissing complaint which "alleges no facts to 'indicate a relationship between the parties that could have caused reliance or inducement.'" (citation omitted)).  For example, a defendant's mere "awareness of its 'free-riding'" is insufficient to bring an unjust enrichment claim.  <u>GateGuard, Inc. v. Amazon.com Inc.</u>, No. 21 Civ. 9321 (JGK), 2023 WL 2051739, at *12 (S.D.N.Y. Feb. 16, 2023).  Here, plaintiff has failed to allege a sufficiently close relationship with Fortress that could have caused reliance, especially given that McGraw informed Fortress of its claim against Westchester and Fortress would not have reason to believe it was assuming an obligation to pay for the roofing.  AC ¶¶ 24-25.

    Thus, plaintiff's unjust enrichment claim is dismissed.

<u>CONCLUSION</u>[10]

    For the foregoing reasons, defendants' motion is granted. The Clerk of Court is respectfully directed to terminate all pending motions and close the case.

Dated:    September 19, 2025
          New York, New York

                                 _____
                                    NAOMI REICE BUCHWALD
                                 UNITED STATES DISTRICT JUDGE

---

[10]    The Court understands that the parties requested oral argument.  <u>See</u> Def. Br.; Opp.; Reply.  However, given that our decision is based on clear legal doctrine, the Court determined that oral argument would not be productive.